May the Court be pleased. My name is Warren Brown. I'm an attorney in Phoenix, Arizona. I represent the petitioner Gary Wedding. The principal issue in this case is burden of proof. The appropriate regulation under which we are proceeding, or under which the administrative proceedings took place, provides that in proceedings under 49 U.S.C. 44709, the burden of proof shall be on the administrator. Counsel, let me tell you what's on my mind with this case so you can educate me. Okay. The ALJ thought that, I think his name was Lutz, the government guy, was lying. The appellate panel within the administrative agency thought your fellow, Wedding, was lying. I read the record. I have no idea who's lying. I can think of reasons why one's lying, why the other's lying. I don't have any trouble seeing why a person working for the government might be lying. I once had a case where an air traffic controller actually tore a piece out of the tape so that we wouldn't find out what he said to a pilot. People can have a lot of job interests in pretending they did their job right when they didn't. I don't know. My inclination is to trust the person who had them testify in front of them, which is the ALJ. He saw them both. But I can't. As far as I can tell, I have to defer to the NTSB. And if I have to defer to the NTSB, I don't see how I can say that there was not a substantial basis in the record as a whole for their conclusion. What else? What else is there? Your Honor, I mean no disrespect, but if indeed that's your conclusion, I would submit that you have to find in favor of wetting. There is a burden to be met. I've described it in my brief quote as the burden of grain. You're right about the burden of proof, but you've got to also pay attention to the standard of review. In terms of the standard of review, the NTSB has to come up with something substantial in order to throw out the administrative law judge's conclusions. Now, in this particular case, I don't know that I should take the time to tell you briefly to the staff. There was substantial stuff on both sides. At least it looks that way. Your Honor, in terms of defending the claim under the concept of burden of proof, the one bringing the claim comes forward with some evidence. The one defending it responds to that. This case, the administrator, other than written interrogatories and requests to produce to Mr. Wetting, conducted no formal discovery, took no depositions. They came up with a document that everybody agrees was altered, in which I say the substantial amount of circumstantial evidence indicates was altered by Mr. Lutz. But your guy admitted, your client admitted that he altered, at least to the extent of cutting off the date and then adding it to the corrected document. So your client admitted that he did some alteration. Negative, your Honor. The alteration to which you are addressing that question is the alteration to the printed or stamped version of the inspector's stamp. That, of course, did happen. The line that said inspector and date had been omitted. Now, two points on that. Why would anybody who was going to alter a document do something as obvious as change? Second point, Mr. Lutz has told us why. He wanted the printed version of the stamp to fit in the block number 3 on the 337 form. The previous stamp always spilled over. It went beyond the appropriate block number 3 and spilled into the lower categories. He said, I want one that fits. That is the rationale for why it was elongated in the scanning and computerized process and why the words inspector and date and the lines were omitted. The other conclusion is that Mr. Wedding did it, and Mr. Wedding is such an idiot that he changed the format of the stamp, which is obvious to everybody. Now, my point on burden of proof is that you can't, under the law, say, I think you did it, therefore, you're guilty. Now, I invite you to disprove it. That's what happened in this case. Mr. Wedding went to such lengths as to submit to a voluntary polygraph. You know the results of that. You know that the administrative law judge declined to accept it. And my question was, what can you do? I don't think we can consider the polygraph, the fact that Wedding passed and Lutz wouldn't take it. I don't think we can consider that. Okay. Isn't that right? I agree with you. As a matter of fact, I don't think we can consider that the ALG who actually saw and listened to these witnesses with his own eyes and ears believed Wedding, because our review is of the NTSB. Is that correct? Yes, it is. Now, the NTSB standard, as you quite correctly pointed out, is the issue that you need to involve yourselves with, admittedly. The only evidence, the only argument to the NTSB was Mr. Wedding told us that this document was faxed to him. Our experts said it wasn't faxed. The administrative law judge says, hey, I'm not buying that. But nonetheless, the argument to the NTSB was he didn't disprove our theory. And we have an expert, and because the expert said that the 337 wasn't faxed, despite the overwhelming evidence, phone records, testimony of Lutz, et cetera, despite that, the NTSB said, well, hey, if this expert said it wasn't faxed, then defense, the defense of Wedding fails, to which I say to this Honorable Court, he's not in a position where he has to disprove that theory. The burden is the other way. The one case that I know you're very familiar with from the Ninth Circuit is Hart v. Lucas. And there, the issue was whether or not a flight instructor knowingly made a falsification. I remind you in Hart that the fact of the falsification, i.e., who did it, was established. The Court went on further and says you've got to do more than that. You've got to show that he intended to do it falsely. In the case before this Court, we've had nothing to show that Wedding, in the first instance, is the author of the alteration to that form. Once more, the NTSB said, well, if in fact it had not been faxed, Wedding's defense fails. That, more than anything else I can point to, illustrates the problem. He does not have to come forward with the defense. Now, I was going to take just a minute and tell you about Mr. Lutz. You have read these items, I'm sure. I took his deposition three times, all with the consent of the administrator, because after Deposition 1, he changed the story. After Deposition 2, he changed the story. And the icing on the cake was that within two weeks of the hearing, I was given for the first time what is Exhibit 10. And this, I believe, is very significant, because Exhibit 10 from the FAA's file produced at the third Lutz deposition said, and I quote, quoting Mr. Lutz, I recollect talking to him on his home number that evening, but I do not recall the subject of our conversation. It is possible that I did conduct a field approval for Gary Wedding on 2900, but I do not recall this particular airplane. What is the cite for that again? This is Exhibit 10 from the Exhibit for Records. Your Honor, I took Deposition Lutz No. 1, where he swore under oath that the only conversation he had with Wedding was about a car business. I then picked up a little more evidence in No. 2 deposition, he said, I may have talked about a 337. No. 3 deposition, he said, I recall that, and I even recall sending it to Wedding with the request that he make changes in Block No. 8. And then the most significant thing about Exhibit 10, or Exhibit for Records 10, is his own words that post-dated his testimony, I mean, his recollection, as reported in three depositions, and now says, hey, I may have granted that. What you're showing me is there's substantial basis in the record to show that Lutz was lying. He said he didn't fax in the phone record show he did. He changed his story repeatedly, and the changes kept getting closer and closer to Wedding's story. Can you show that there's not a substantial basis in the record as a whole for what's calling Wedding a liar? For the conclusion that Wedding is lying? Your Honor, I'm going to answer that question by quoting the NTSB. The NTSB said it was shown that Wedding had the computer and the scanner to do this. The irony is that the record showed Lutz had the computer and the scanner to do it. Everybody has a computer and scanner to do it nowadays. Your Honor. I didn't take that as carrying much weight. Your Honor, if that's the case, that's a pretty simple thing for the administrator to approve it, to have offered some evidence. The only evidence, and that's what we have to deal with, is the testimony of Wedding, which he didn't have it. I submit to you that if you were to balance the circumstantial evidence, which is all you've got in this case, we have Inspector Lutz telling us he wanted a stamp that fit. He ordered a stamp. He had a scanner. He claims he never used it. He had the computer program. He claims he never used it. On the other side of the coin, you would have to assume that Gary Wedding somehow was motivated to alter that stamp in a way that is obvious by eliminating the lines in the signature or, I mean, the words inspector and date under the signature line. Well, he had a reason. He had a motive, and he could have done it. But, gosh, I would guess most of us have computers and scanners nowadays. Well, his reason was he was real late on fixing this plane up. Your Honor, that's a wonderful point. He had to get it out the door. Now, if you were in Wedding's appointing, and I would submit to you if any of us were, you would expedite this matter as quickly as possible. Expediting it means faxing the 337 back to Mr. Lutz with the request to change his intended assignment. As the administrative law judge pointed out, the issuance of 337s, which I'm sure this equipment or major change, are routinely, routinely issued, especially in this time frame, for the addition of GPS, global navigation systems, global positioning systems. They are done routinely. The idea that you would go to the trouble that the government's expert, I'm sorry, the administrator's expert pointed out in terms of coming up with the falsification belies the logic of simply typing in two lines of changes that Mr. Lutz acknowledged that he thought he had asked for when he finally came to the realization he may have granted this, as opposed to going through computer scanning, removing pixels, adjusting the horizontal plane but not the vertical plane. All of that was the substantial evidence before Judge Mullins. That was what was persuasive. That is why he said, in effect, I simply can't buy Mr. Lutz's position. But that's icing on the cake. The cake is the government, the FAA, must come forward with something other than this document was altered, therefore I'm here. I guess what they have here is, here's the rubber stamp. We look at the rubber stamp here in tab 35, no, tab 1, and you can see that the letters are squeezed together. There's an expert who says the letters are squeezed together, but any fool can see it without an expert. And the expert says the way the letters get squeezed together like that is by being altered when you cut and paste them on in a computer. And it's pretty obvious it's cut and pasted on. And that seems to be the core of what the FAA uses, or the NTSB uses, to say that the ALJ just missed the boat on this. Well, what's the answer to that now? In fact, I'm sure I understand what you said. It's not the fact of how long it's in the computer that alters the horizontal plane. It is the fact of applying a software program designed to alter the plane. In other words, you have to have, first of all, a computer, secondly, a scanner, thirdly, a software program that will accept a scanned document and change it. And in this case, it changes it so horizontally it's longer, but vertically it's the same. Again, the irony of the evidence is Mr. Lutz had that available to him, but Mr. Wedding did not. I would like to speak to one other thing that can get out of the way, I think, quickly. As you know, the National Transportation Safety Board struck my original brief for the reason that it contained material that I described as argument in the case of my illustrations and also material that was in the form of deposition testimony. I'm not going to argue this point to the court except to say that the record as defined under the appropriate rules is the transcript of testimony and exhibits, testimony and exhibits, which I'm going to call evidence, together with all other papers, requests and rulings. Now, other papers doesn't specify depositions, but at the hearing I put the depositions in, asked them to be recorded as part of the record rather than go through the whole bit of asking the same questions over and over again. I think the NTSB was wrong because their conclusion was only the evidence constitutes the record. Yet paragraph 821.4 says the record or the transcript of testimony and exhibits together with all papers filed therein. How would the letters have gotten squeezed together if Lutz applied the rubber stamp to the form and then faxed the form? Oh, they wouldn't that way. Nobody is suggesting that theory. The way it was done is that the stamp first had to be put on a piece of paper. Then the piece of paper or the Form 337 is scanned into a computer. Then the computer, using a software program that has the ability to digitize, I mean to alter what it sees in the computer, then can stretch it, can compress it, can make it taller, can make it shorter. I would guess most of us have scanners and a lot of us have Photoshop. Right. But I'm still trying to figure out why Lutz would be doing it. Mr. Lutz testified that it was his desire to have a form which fit into block number 3 of the 337. His previous form did not. He ordered a new one. The new one came back and it still didn't fit. What is the logical thing to do? The answer to the question is Lutz was, for some reason, very intent on getting his rubber stamp and signature to fit in the block. Yes. And you can tell he was because he went to all this trouble of ordering a new rubber stamp. Yes. I have one question. You did not file a reply brief? Your Honor, no, I did not. Why? I covered it all in the original brief. It's pretty unusual not to. I think it's a pretty straightforward case. Well, OK. You can rest on that. That's fine. I just wanted. Let me just say one last thing and maybe it echoes what Judge Kleinfeld said. But you've got a situation where I'm looking at the administrators, the board's opinion where they say that although respondent admits cutting and pasting the bottom of the document as well as the back of it, he denies forging Mr. Lutz's signature and stamp and denies forging Mr. Hill's signature. Yes. Well, let me finish. So you have a man who already admitted to adulterating a part of the form, has a substantial motive to change the form because his client is really pushing him. And there is to say, I mean, it doesn't isn't there substantial evidence of what the NTSB just said, what I said? And if that's true, doesn't that support their finding? No, they completely missed the point. If you'll read it carefully, you will note that the NTSB was making reference to the signature line at the bottom. What happens as a practical matter with today's technology is that these forms are put on a computer and they are copied, they are sent back and forth, they are transmitted by fax. The change in an error on the signature line has nothing to do with the issue of this case. This case is alleged to have involved a falsification of the 337 by virtue of a change in block number 3. The block, signature block and block number 8 are not at issue. The NTSB just picked up on that and said, well, gee, he reprinted this, so he must be guilty of the other. Thank you, Your Honors. Roberts. Thank you, counsel. Good morning, Your Honors. Good morning. My name is Joyce Ritos. I represent Respondent Federal Aviation Administration in this case. As Your Honors have focused in on, the central issue in this case is whether there is substantial evidence in the record that Mr. Wedding made or caused to be made an intentionally false entry on the Form 337 in question. There is substantial evidence in the record to establish that. It sure bothers me. You know, if I were just in a position where I had to bet $100 on who's telling the truth, I'd put my money on Wedding because the ALJ saw and heard both of these people, and that was his judgment. And you can explain both ways these details about the documents. And so I guess we're just, for you to prevail, it really has to be whether there's substantial evidence on the record as a whole to support the NTSB credibility determination. Yes, Your Honor. Is that right? First of all, I'd like to talk about what is not disputed in the record. As counsel noted, it is not disputed that the form was altered in Block 3. It is also undisputed that Mr. Wedding gave the altered form to Mr. Sheppard, one of the owners of the aircraft. It is also undisputed that the only individuals other than Mr. Wedding who had access to the form to alter it were Inspector Lutz and Mr. Lawrence Hill, the mechanic who inspected the aircraft for return to service. The party stipulated that Mr. Hill did not alter the form. The parties also stipulated that the form was not among the FAA's official aircraft records for the aircraft in Oklahoma City. And they stipulated that Mr. Hill, who normally keeps copies of the Form 337 he signs, did not have a copy of this Form 337 in his records. So the only party who had access to this form was Mr. Wedding. He originated it. He's the one who gave the copy to Mr. Sheppard. The only other copy in existence was the copy that he had in his files, which in Block 8 was different from what was in the exhibit. Why shouldn't we believe Wedding's story that Lutz is responsible for the Block 3, and that if somebody made a filing error or a searching error, that happened at the NTSB? Several things, Your Honor. First of all, Inspector Wedding testified at the hearing that when he does an FAA approval, he also enters that information into a national database. Lutz's credibility is a little shaky, though, because his story keeps changing in important details. Well, Your Honor, I think it's true that, and we don't argue that, his memory is showed to be fairly cheesy. We don't know if it's memory or truthfulness. Either way, his testimony doesn't really persuade as much as it might. Well, but it was undisputed at the hearing that Mr. Lutz does indeed put this information into the PTRS. It was when the PTRS was pulled up, this is the database, the Form 337 did not show up there. It was not in the FAA's records in Oklahoma City for the aircraft. You know, it occurs to me it would be perfectly consistent with that if Lutz messed up, and now he's covering up his error by blaming Wedding. Your Honor, Mr. Lutz would have had no reason to try and cover this up. If he, in fact, had put it in the database and he failed to put it in the database? Yes, Your Honor. I mean, he would have no reason to do that. He would, because the, if he had actually signed the approval, the approval would have been, would not have been a false entry. But on the other hand. What I'm thinking is if he didn't do his job right, anybody who works for a big bureaucracy and they don't do the job right and don't file the paperwork right has a reason to cover that up. Your Honor, there's been no evidence put into the record that Mr. Lutz, Inspector Lutz didn't do his job right. If anything, I think, and the Board found this, I believe, that Mr. Inspector Lutz had no reason to falsify this information. Whereas Mr. Wedding did. He was under extraordinary pressure from his clients. He had promised them that he would have the aircraft back within ten days to two weeks after receiving it in mid-December. At the end of the two weeks, Mr. Shepard called him. It wasn't ready. And then he was repeatedly calling him throughout the month of January and being told, well, it's not ready. And finally, in February, the beginning of February, he called and said, look, we want our airplane back. And at that point, the pressure on Mr. Wedding became extreme, that he needed to get that work done or give the airplane back to the owners. Mr. Wedding conceded at the hearing that he could not perform the installation without a field approval. He also admitted that Inspector Lutz gave him a list of corrections. I don't see where this is getting me very far, because it doesn't really contend with my point. Wedding has a motive, and that is to get the plane back to the owner with the paperwork before he actually has the paperwork. Since he's already been kind of slow on the repair. And Lutz, you say, well, he has no motive. And it seems obvious to me he does. If his boss keeps telling him, Lutz, what you're supposed to do when you issue one of these certificates is you put it in the database. And Lutz says, oh, I keep forgetting. Boss says, quit forgetting. Don't forget again. And Lutz issues the certificate, and he doesn't put it in the database. Two things he can do. One is, if his boss finds out, he can say, I messed up. And the other is to say, I never issued that certificate. I didn't mess up. Your Honor, if there were evidence in the record of that, you know, that's marvelous theory. And if there were evidence in the record of that. We'll never know. But there isn't any evidence in the record. We'll never know the internal affairs of this agency. Yes. But what we do know from the record is that Mr. Wedding had motive to do this. Lutz's story changes enough so that I'm just not willing to assume the best of Lutz. And I want to know what else there is. I think what the NTSB is saying is we don't have to believe Lutz. We don't have to make this determination on Lutz's credibility. The scientific evidence shows that Wedding faked the document. Yes, Your Honor. Why don't we move to that and explain it. Yes, Your Honor. The Board did note that Mr. Lutz's testimony was problematic, and they concentrated on the fact that the law judge did not address the scientific evidence at all. Right. I'm trying to move you to the scientific evidence. You've been marrying Lutz, and it strikes me as a very bad one to rely on. Yes, Your Honor. But the what does the form itself show? Mr. Wedding has testified that the form was faxed to Mr. Lutz and that Mr. Lutz faxed it back. The forensic documents examiner testified that his examination showed that the document had never been faxed. And he pointed to three indicia. One of those was that there were no fax headers. Secondly, there was no reduction in size to the image. And, in fact, there would have been a double reduction because it had been faxed twice. And there was no stair-stepping, which is typical of faxed documents. Well, what does that phrase mean? Stair-stepping? It is if you look at exhibits C6 and C7, and these were documents that were faxed from the very same machines back and forth that Mr. Wedding said were used. Throughout, where it has lined information, you will note, you should see that there are skip marks on the lines where Where are we looking now in the record? The appellant's excerpts of record. In the, well, I don't know that they're in the excerpts of record, but in the record itself, they would be Supplemental excerpts of record? I don't have the record itself. That's hard to get. Oh, I understood it, but the Court requested it. Well, there's one record, three judges, and we live in different places. Right. How about the excerpt? Do you want to give us? No, it's, I don't believe either one of, either. They didn't put it in the excerpts. No, they weren't put in the excerpts. Could you explain orally what, I mean, I just don't know what the word is. Yes. What happens is that there's what they call transmission noise during the faxing process, and a result of that, when the fax picks up, there are certain places where it's not inked. And this is very apparent, particularly along lines, and so there are little skips on the lines. And this occurs throughout the document, not just in one or two places. None of that is apparent on the, on Exhibit C-2, which was tab one of the excerpts of record. And it's not in the excerpts, right? My fax, when I set it on fine resolution, does not have visible stepping. So I, did you say the same fax that was used here does? Yes, Your Honor. But I can't look at it because it's not in the excerpts. Your Honor, I have copies of these exhibits with me. I would be happy to provide them if I may approach you. Are you certain that they're in the record? Yes, Your Honor. They have the record page numbers on the top of them. Is there any objection? If not, hand them to the clerk. He'll give it to us. Could we see them? Thanks. Wait a minute. These are two different things. Yes, they're Exhibits 6 and 7, Your Honor. Oh, there's just one copy? You didn't make copies for all of us? No, Your Honor. You didn't put them in the excerpts? Why are you relying on something without making it available to us? Your Honor, I apologize. You know, it's just, I don't know if we can do anything with this. I'm inclined to hand it back. We do have the whole record, I guess. We'll look in the record if we are. Okay. In any case, they are Exhibits 6 and 7 in the record. The conclusion of the forensic documents examiner was that the absence of these three indicia of faxing meant that the document had never been faxed. On the other hand, the documents examiner did conclude that the document was skinned and manipulated in a computer, and that the stamp was scanned and manipulated separately from the signature. And also that the signature. Since we know that it really matters to Lutz for some reason whether the stamp fits the box, why shouldn't we figure that Lutz just did this as a stopgap until he got his new rubber stamp? Your Honor, even if you go that route. He ordered a new rubber stamp, right? He ordered the stamp, but what happened in the manipulation wasn't that the text was elongated, as Mr. Wedding's counsel has asserted, but that it was compressed. And it was only compressed along one axis. It was compressed in a notable manner so that the text, the letters look thin and tall rather than having their normal appearance. Also, it was the documents examiner said that not just. That happens with my fax when there's slippage on the paper feed. Your Honor, I believe that what you would see in that case is that the compression would be that the letters would be. They get taller. Shorter. No, they get taller. Well, Your Honor, I can't address that. I'm not an expert. I only know what the expert testified to. I'm no expert either. It just varies on how the paper feed messes up. Right. But the expert also found that the signature was scanned and manipulated. Inspector Lutz, even if he had played with the stamp, would have had no reason to play with his signature. He could have put an original signature on it. He didn't do that. The evidence was that the signature was larger than normal by 7 percent, and it also did not, does not look the same as other examples of the signature that were kept in the normal course of business as far as being compressed within the perimeter of the stamp. Well, it sure does look like it was. The form and the signature block or rubber stamp signature block were scanned in separately, and then there was a cut and paste operation with Photoshop or some similar program. Yes, Your Honor. Why wouldn't that be Lutz? I don't believe Mr. Lutz did not have time to do that. He received the form when he arrived at the office on the morning of February 9th. He reviewed it and he sent it back at 652 before he left for his meetings with Honeywell On the other hand, Mr. Wedding had three days to do this operation. He had from the 9th until he gave the form to Mr. Shepard on the 12th. How much time would it take? My understanding, Your Honor, and I'm no expert on this, is it might take as much as two hours. But, again, I really don't know. I can't speak to that. Did somebody testify to that? I don't believe so. I actually looked for that in the transcript. It would be an interesting and rather critical fact if it had been testified. Yes, Your Honor. I looked for a time period in it, but given that, you know, Mr. Wedding had three days to accomplish this, Mr. Wedding had the form back and it's very obvious it's a cut and paste. Mr. Wedding never questioned that. You would think that if he saw this, this is what he got back. And it's what he said he got back. That there would be, that he would have said this doesn't look right. The other thing is this form is an important form. It travels with the aircraft. It is filed in, a copy of it is supposed to be filed in Oklahoma City so that a record of all the alterations made to the aircraft is maintained and that they can be tracked historically. The record also has evidence that Mr. Wedding had the opportunity to do this as well as the motive. Mr. Wedding, as I said, originated the form. Mr. Wedding testified that he received the document back from Inspector Lutz on February 9th. Mr. Wedding had access to Inspector Lutz's signatures from other documents that he had signed for Mr. Wedding. And Mr. Wedding had access to various FAA inspector stamp impressions, not just the one that Mr. Lutz had been using, but also the one that Inspector Bassett had been using. Inspector Bassett's stamp impression looks very similar to the stamp impression that appears on Exhibit C2. And Inspector Bassett testified that he's only ever had one stamp, and he's had that stamp since 1997. Mr. — again, Mr. Wedding did not give the form to Mr. Shepard until February 12th. So he had three days during which either he could have altered the form or he could have had someone else alter it for him. Therefore, Your Honor, the FAA contends that there is substantial evidence in the record that Mr. Wedding intentionally falsified the form. I would note that the Board in its decision concluded that the administrative law judges' findings on credibility were contrary to the overwhelming weight of the evidence. And there is a Ninth Circuit decision which is cited in my brief, Olson v. NTSB, which says, When presented with incredible explanations, the NTSB often infers actual knowledge of false statements in violation of Regulation 4312a. And then it goes on to continue, it was reasonable for the NTSB to do so in this case. Your Honor, we assert that the Board acted reasonably in finding that Mr. Wedding intentionally falsified the information on the form. Thank you, counsel. Thank you. Your Honor, Excerpt of Record 27 and one of the deposition transcripts makes clear that the expert said, The signature is the original signature of Mr. Lutz. It could have gotten there two ways. He could have signed it after this 337 had been altered, or it could have been lifted, digitized, and put on in another fashion. Number two, the fact the document's not in the Oklahoma City file is explained by the procedure, in effect, explained in the record that after the 337 is filled out, the mechanic keeps a copy, which Wedding did. The owner of the airplane keeps a copy, which was found in the airplane. And the completed copy is sent back to the Scottsdale FSDO, or the Federal Aviation District Office, for putting in their computer and then sending to Oklahoma City. Last but not least, the comment about what counsel just told you, that the NTSB's board found that the expert said that Mr. Wedding did it, in so many words, the expert said in his opinion it had not been faxed. That was what was disputed. Judge Mullen disputed it and basically said anybody with a copy machine knows you can make them bigger or smaller, et cetera. But the expert never, never, and you won't find in the record anything that says Mr. Wedding forged this signature or falsified this document. He said, in my opinion, it could not have been faxed. We have records, despite what Mr. Lutz told us, first of all, that faxes did go back and forth the day before and the day of, and that is also in the record. Thank you, Your Honor. Roberts. Thank you, counsel. Wedding v. NTSB is submitted. Warden v. Cross is submitted. Anura v. Ashcroft will be heard at 2 p.m. We're adjourned until 2 p.m. All rise. Welcome to the session. Thank you. Thank you. Thank you.
judges: Noonan, Kleinfeld, White